UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| U.S. COMMODITY FUTURES TRADING COMMISSION, | : | |
|---|---|---|
| | : | |
| Petitioner, | : | Misc. Action No.: 14-318 (RC) |
| | : | |
| v. | : | Re Document No.: 9 |
| | : | |
| BRIAN STEVEN EKASALA, | : | |
| | : | |
| Respondent. | : | |

**MEMORANDUM OPINION**

DENYING RESPONDENT'S MOTION TO QUASH SUBPOENA AND/OR CHANGE VENUE,
AND REQUIRING RESPONDENT'S COMPLIANCE WITH ADMINISTRATIVE SUBPOENA

**I. INTRODUCTION**

This action arises out of the Respondent's failure to comply with a subpoena issued by the Division of Enforcement of the Petitioner, the United States Commodity Futures Trading Commission ("CFTC"). The Respondent now moves this Court to quash the subpoena and, if the subpoena is not quashed, to change venue. For the reasons set forth below, the Respondent's motion is denied. The Petitioner requested that this Court issue an order requiring the Respondent's compliance with the subpoena, *see* ECF No. 1, and the Respondent's response was the motion at issue. Because the Court is denying the Respondent's motion, the subpoena will be enforced in its entirety.

**II. FACTUAL BACKGROUND**

The Respondent, Mr. Brian Ekasala, was the operator of Midwest Metals Exchange, LLC ("Midwest"), a Florida limited liability company formed on January 26, 2010. Mem. in Supp. of Appl. for Order to Show Cause at 3, ECF No. 1-1. From April 2012 through February 2013,

Midwest operated as a precious metals broker, with offices in Fort Lauderdale, Florida. *Id*. Although Midwest was registered with the Florida Department of Agriculture and Consumer Services as a Commercial Telephone Seller, Midwest was never registered with the CFTC in any capacity. *Id*. On November 15, 2011, the CFTC issued a formal order of investigation entitled "Certain Persons Engaged in Unlawful Retail Commodity Transactions," (the "Order") pursuant to the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1 *et seq.* (2012). *Id*. at 4. The Order was issued, among other reasons, for the purposes of determining whether any person, firm, or entity, in connection with retail commodity transactions, has engaged, is engaging, or is about to engage in any acts or practices in violation of the Act. *Id*.

On November 16, 2013, the Division of Enforcement ("Division") of the CFTC served the Respondent with its administrative subpoena *duces tecum/ad testificandum* containing eight requests for documents. *Id*. The Respondent sought an extension of the return date for the subpoenaed documents to December 4, 2013, which the Division granted. *Id*. On December 4, 2013, the Respondent neither produced the documents nor requested an extension of time to produce them. *Id*. In light of the Respondent's continued contumacy following a phone conversation, numerous letters, and two subsequent dates for production, the CFTC brought a subpoena enforcement action against the Respondent on March 26, 2014. *Id*. at 4–5. After seeking an extension to answer the Court's Order to Show Cause, *see* ECF No. 6, the Respondent moved to quash the subpoena and, in the alternative, to change venue. *See* ECF No. 9. The Respondent does not challenge the Petitioner's authority to subpoena the information at issue. Rather he challenges the subpoena on the grounds that it is too indefinite and seeks irrelevant information. Because the Court finds that the information sought in the subpoena is

relevant to the CFTC's investigation, and not overly broad or burdensome, the Court will deny the motion to quash and enforce the subpoena.

### III. ANALYSIS

In his motion to quash, the Respondent makes three principal arguments: first, that the subpoena seeks irrelevant information, is overbroad, and compels the Respondent to potentially incriminate himself; second, that the subpoena is incomplete and burdensome; and finally, that the Respondent cannot comply with the subpoena because he has not been a custodian or officer of Midwest for over two years. The Respondent also argues that in the event the subpoena is not quashed, the venue should be changed because maintaining the proceedings in Washington, D.C. would place the Respondent in a severe position of hardship. The Court will address each of these arguments in turn.[1]

#### A. The Information Sought by the CFTC is Relevant to its Investigation

An administrative subpoena must be enforced if the information sought "is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). A court must defer to the agency's appraisal of relevancy, which "must be accepted so long as it is not obviously wrong." *Federal Trade Comm'n v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992) (internal quotation marks and citations omitted). In so doing, the Court must be mindful that "[t]he standard for judging relevancy in an investigatory proceeding is more relaxed than in an

---

[1] To support his contentions, the Respondent cites to authority pertaining to subpoenas issued for discovery purposes pursuant to Federal Rule of Civil Procedure 45. The subpoena at issue in this case, however, is an administrative one issued in accordance with the Commodity Exchange Act and the CFTC's Regulations as set forth in 17 C.F.R. § 11.1 *et seq.* (2013). The case law cited by the Respondent is thus inapplicable. *See, e.g.*, *Resolution Trust Corp. v. Feffer*, 793 F. Supp. 11, 14 (D.D.C. 1992) ("[T]he rules of civil procedure do not apply to restrict or control administrative subpoenas . . . .") (citing *Bowles v. Bay of N.Y. Coal & Supply Corp.*, 152 F.2d 330, 331 (2d Cir. 1945)).

3

adjudicatory one . . . . The requested material, therefore, need only be relevant to the *investigation—*the boundary of which may be defined quite generally . . . ." *Id.* at 1090 (emphasis in original; internal citations omitted). "[W]hile the court's function is 'neither minor nor ministerial,' the scope of issues which may be litigated in an enforcement proceeding must be narrow, because of the important government interest in the expeditious investigation of possible unlawful activity." *FTC v. Texaco*, 555 F.2d 862, 872 (D.C. Cir. 1977) (internal citations omitted). In light of the broad deference afforded to the investigating agency, it is essentially the Respondent's burden to show that the information is irrelevant. *See Invention Submission Corp.*, 965 F.2d at 1090.

An administrative agency's investigative power must necessarily be broad if it is to serve its purpose. As the Supreme Court has pointed out, an agency's investigatory authority is far-reaching and comparable to that of a Grand Jury, which "can investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not." *Resolution Trust Corp. v. Walde*, 18 F.3d 943, 947 (D.C. Cir. 1994) (quoting *Morton Salt Co.*, 338 U.S. at 642–43). Moreover, in the pre-complaint stage, "an investigating agency is under no obligation to propound a narrowly focused theory of a possible future case. Accordingly, the relevance of the agency's subpoena requests may be measured only against the general purposes of its investigation." *Texaco*, 555 F.2d at 874.

Here, the Petitioner "is investigating whether [the Respondent], or any other person acting in concert with him, has violated the [Commodity Exchange Act] in connection with the solicitation, offering to trade or trading of leveraged, margined, or financed precious metals contracts in connection with the operation of Midwest." Mem. in Supp. of Appl. for Order to Show Cause at 8. To that end, the subpoena at issue provides dates, definitions, instructions, and

4

eight specific requests for documents for the period from January 1, 2011 through the present.[2] *See* Mot. to Quash, Ex. 1 at Schedule A Section II, ECF No. 9. The information and documents requested in the subpoena, such as corporate formation documents, promotional materials, information regarding former officers and employees, and bank account statements plausibly contain information relevant to the investigation. Furthermore, orders issued for the purpose of determining whether individuals or businesses are violating the Commodity Exchange Act are not uncommon in the CFTC's investigative process;[3] thus, the Petitioner was not required to articulate its purpose with greater specificity. *See Texaco*, 555 F.2d at 874 n.26 (explaining that because the FTC resolution at issue was not "uncommon in the investigative process . . . the agency was not required to articulate its purpose with greater specificity."). Because the information requested is limited and seeks to ascertain facts related to whether the Respondent violated the Act, it is relevant, and therefore the subpoena should not be quashed on this ground.

### B. The Subpoena is not Overly Broad

The Respondent also argues that the subpoena's "lack of information and explanation as to its nature provides [him] with no guidance or direction on whether or not participation could

---

[2] Respondent takes issue with the CFTC's choice to make the "relevant period" from April 2012 through February 2013. *See* Mem. in Supp. of Appl. for Order to Show Cause 3. Even though that is the "relevant period," the CFTC believed Midwest was operating as a precious metals broker, given the CFTC's wide latitude in investigating whether a violation of the Act has occurred, *see infra* note 3, the Court does not find that information requested as early as January 2011 is irrelevant to that inquiry, given that Midwest was incorporated in 2010 and that many of the documents requested by the CFTC in the subpoena pertain to Midwest's incorporation. *See generally* Subpoena at Schedule A Section II, ECF No. 1-2.

[3] *See* 7 U.S.C. § 12(a)(1) ("For the efficient execution of the provisions of this [Commodity Exchange] Act . . . the Commission may make such investigations as it deems necessary to ascertain the facts regarding operations . . . and other persons subject to the provisions of this Act."); 7 U.S.C. § 9(5) ("For the purpose of securing effective enforcement of the provisions of this chapter . . . any . . . other officer designated by the Commission . . . may . . . subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records that the Commission deems relevant or material to the inquiry.").

serve to self-incriminate." Mot. to Quash 2, ECF No. 9. In accordance with the rights guaranteed by the Constitution, however, the Respondent may refuse to provide information that may tend to incriminate him by invoking the Fifth Amendment.[4] *See* U.S. Const. amend. V. The Court therefore rejects the Respondent's overbreadth argument as a basis to quash the subpoena.

### C. The Subpoena is not Unduly Burdensome or Incomplete

Respondent next argues that the subpoena is unduly burdensome and incomplete. *See* Mot. to Quash 2–3. The burden of showing that the request is unduly burdensome is on the subpoenaed party. *See Texaco*, 555 F.2d at 882. To meet this burden, Courts have required a showing that compliance "threatens to unduly disrupt or seriously hinder normal operations of a business." *Id.* The standard for showing that a request is unduly burdensome, then, is a high one. *FTC v. Church & Dwight Co., Inc.*, 747 F. Supp. 2d 3, 8 (D.D.C. 2010) (citing *Texaco*, 555 F.2d at 882). That burden, however, is not easily met where an agency inquiry is pursuant to a lawful purpose, as it is here, and the requested documents are relevant to that purpose. *Id.*

Respondent argues that the subpoena is unduly burdensome because (1) it has numerous date and deadline inconsistencies throughout November 2013 making it difficult if not completely impossible with which to comply, and (2) he does not have the ability to produce the documents on behalf of Midwest given that he is not currently a registered agent, officer, or

---

[4] The Petitioner states that it sent a document titled "Statement to Persons Providing Information about Themselves to the Commodity Futures Trading Commission" informing the Respondent of his rights—including his Fifth Amendment right against self-incrimination—in connection with the subpoena. *See* Pet. Opp'n Mot. Quash 4 n.2, ECF No. 10; Subpoena at 10, ECF No. 9. The Respondent alleges that he never received that document. *See* Mot. to Quash 3, ECF No. 9. The record does not reflect that either Respondent or his counsel at the time brought this alleged deficiency to the CFTC's attention where it could have easily been remedied. Regardless of whether Respondent ever received the document, he is still entitled to the Fifth Amendment's protection against self-incrimination.

manager of Midwest, and has not been one since March 2012. *See* Mot. to Quash 3–4. As to

Respondent's first argument, the record is clear that the Respondent has not been responsive or

particularly communicative with the CFTC regarding compliance. Any discrepancy in

production dates, then, does not help Respondent, as he never made an attempt to comply with

them in the first instance, and upon his request, received new response dates regardless. *See* Ex.

5, ECF No. 1-2 ("[T]his email confirms that we shall have until December 4, 2013 to respond to

the subpoena issued by CFTC regarding 'certain persons engaged in unlawful retail commodities

transactions.'"); Ex. 2, ECF No. 1-2 ("I am making a final request the subpoenaed documents be

provided to the Commission no later than December 16, 2013.")

As to Respondent's second argument, though he asserts that he has not been an officer of

Midwest since March 2012, the subpoena seeks documents and information "in the possession,

custody, or control of [the Respondent] for the period from *January 1, 2011* through the

present." *See* Subpoena at Schedule A, Section II (emphasis added). As stated above,

information during that time period, during which the Respondent was involved with Midwest,

may be relevant to the Petitioner's investigation.[5] As the former operator of Midwest, the

Respondent may have access to many of the requested documents during the time period in

---

[5] Courts have excused compliance with a part of a subpoena where the respondent lacks the information necessary to comply with it. *EEOC v. C & P Tel. Co.*, 813 F. Supp. 874, 877 (D.D.C. 1993) (citing *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir. 1981)). Respondent argues that he does not have access to the documents sought by the Petitioner because he is no longer an officer of Midwest. *See* Mot. to Quash 4. Respondent's argument, however, is half-hearted, not legally supported, and not supported by affidavits or other documentation. Accordingly, whatever information and documentation Respondent has in his custody or control from January 1, 2011 through present must be produced, as set forth in the subpoena. If Respondent lacks access to documents, he must produce affidavits or other evidence to support his purported inability to comply. *See Bay Shipbuilding Corp.*, 668 F.2d at 313 (explaining that because the respondent "did not show how the subpoena might be unduly burdensome nor did it present any affidavits to support its conclusionary [sic] assertion to that effect," the district court was justified in finding the subpoenas were not unduly burdensome).

which he served as an operator and officer, and about which the CFTC is fully entitled to inquire. Given the specific nature of the requests for documents, and Respondent's failure to produce evidence showing that production of those documents would be particularly difficult, the Court finds that the Respondent has not met his burden for showing that the subpoena is unduly burdensome.

### D. The Court will Deny Respondent's Request to Transfer

The Respondent finally moves to change the venue of this action, alleging that proceeding in Washington, D.C. places him in a severe position of hardship because he cannot afford the travel or out-of-state representation,[6] and he has school and family obligations in Florida. However, Respondent's presence will not be needed in this Court. The Court already ordered that no live appearance by the parties would be required, Order at 2, ECF No. 2, and finds no reason to set a hearing date at this time. Moreover, transferring the proceedings to South Florida would be inappropriate given that the CFTC is headquartered in Washington, D.C., and there are no regional offices in Florida.[7] While the Respondent will likely need to appear before the CFTC, this burden was created by the Respondent himself: had he complied with the subpoena when it was first issued, the Respondent could have avoided the necessity to appear before the CFTC in the first place. *See* Subpoena Cover Letter, ECF No. 1-2 ("You need not appear in person on the above return date if you comply by mail according to the instructions provided on page two of the cover letter."). In addition, the Petitioner has made clear that it can arrange for direct payment of certain travel expenses such as airfare and that the Respondent is eligible to be reimbursed for allowable travel expenses relating to any travel pursuant to the

---

[6] Respondent does not explain why he would need out-of-state representation given that he previously proceeded in this action with in-state representation.
[7] *See* U.S. Commodity Futures Trading Commission, *http://www.cftc.gov/Contact/ index.htm* (last visited July 18, 2014).

subpoena. *See* Pet. Opp'n Mot. Quash 6, ECF No. 10. There is no hardship, therefore, to warrant a change in venue. The Respondent's motion to change venue is thus denied.

## IV. CONCLUSION

For the foregoing reasons, the Respondent's Motion to Quash Subpoena and/or Change Venue is **DENIED**. The subpoena will accordingly be enforced in its entirety. An order with compliance instructions consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 31, 2014                                   RUDOLPH CONTRERAS
                                                       United States District Judge